**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ABNL (ANDY BOYO NIGERIA) LIMITED, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4662 |
| | § | |
| BAKER HUGHES PROCESS SYSTEMS, | § | |
| A DIVISION OF BAKER HUGHES EHO, | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This arbitration dispute is before the Court on Andy Boyo Nigeria Limited's Application to Vacate Arbitration Award ("ABNL's Motion") [Doc. # 1]. Baker Hughes Process Systems ("BHPS") filed an Amended Response and a Cross-Motion to Confirm Award ("BHPS's Cross-Motion") [Doc. # 5].[1] The motions are ripe for decision. Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that ABNL'S Motion should be **denied**, and BHPS's Cross-Motion should be **granted**.

**I.    BACKGROUND FACTS**

The following facts are undisputed unless otherwise noted:

ABNL is a Nigerian company. BHPS is a company of Bermudan citizenship. Both engaged in the oil servicing business. In 1998, these companies signed a contract ("Main Contract") with SPCD Petroleum Development Company, Nigeria ("SPDC") for the

---

[1]    BHPS filed a Response on December 20, 2004 [Doc. # 4] and an Amended Response and Cross-Motion to confirm award on December 21, 2004 [Doc. # 5]. ABNL filed a Reply of ABNL to Amended Response of Baker Hughes Process Systems to ABNL'S Application to Vacate Arbitration Award and Response to BHPS's Cross-Motion to Confirm Award ("ABNL's Reply") [Doc. # 10]. BHPS has filed BHPS's Reply to ABNL's Response to BHPS's Cross-Motion to Confirm Award. ("BHPS's Reply") [Doc. #12].

construction, installation and commission of a barge.  The Main Contract provided that "installation" and "commissioning" of the barge would be carried out in Nigeria 18 months after the delivery of the barge at Ogbotobo, Nigeria.[2]  The Main Contract did not address the location of construction of the barge.  ABNL states that the barge was "constructed in the United States under the general management and supervision of [BHPS] and then transported to Nigeria where the rest of the construction was done and the barge commissioned."[3]  To further define their respective rights and duties, ABNL and BHPS signed a Joint Contractor Agreement ("JCA") on  September 3, 1998. ABNL acknowledges that BHPS "was only concerned with the construction of the barge in the United States and that once delivered to Nigeria, [ABNL] became responsible for the barge."[4]

The JCA contains an arbitration clause requiring the parties to submit disputes to arbitration, as well as a choice of law provision that Texas substantive law (excluding Texas's conflicts laws) governs the JCA.[5]

BHPS filed for arbitration in September 2001 claiming that ABNL breached the JCA and seeking payment of fees and related sums allegedly due under the contract.[6]  The

---

[2]     "Installation" generally means "to set up for use or service," WEBSTER'S NEW COLLEGIATE DICTIONARY 593 (1979).  "Commission" means "ready for active service." *Id.* at 224.

[3]     ABNL's Motion, at 5.

[4]     *Id.* at 9-10.  ABNL expressed this view of the allocation of responsibility under the JCA to the Arbitrators early in the proceeding.  *See* Exhibit 6 to BHPS's Reply ("Claimant's [ABNL's] Initial Submission on CAMA § 54), at 3 ("ABNL would oversee delivery, installation, and commission of the Barge in Nigeria. *See, e.g.,* A. Boyo fax (July 21, 1998) ('Further all "in country" tasks and logistics . . . are currently scheduled to be handled by ABNL exclusively.').").

[5]     The parties dispute which country's law applies. The Court addresses this issue where necessary.

[6]     Specifically, BHPS sought unpaid management fees, unpaid fees for time and material, reimbursement of insurance premiums, plus costs, legal expenses, and interest.

arbitration was commenced pursuant to the JCA, § 12, under the auspices of the American Arbitration Association ("AAA"), using the AAA Commercial Arbitration Rules ("AAA Rules").   The AAA assembled the three member Arbitral Tribunal ("Tribunal") in accordance with the terms of the JCA.   The Chairman of the Tribunal was appointed on February 27, 2003.

The JCA provided that "the decision of the Tribunal shall be rendered within 120 days following the selection of the chairman of the tribunal."   The 120-day period accordingly ended on June 27, 2003.[7]   At the initial preliminary hearing, BHPS proposed a timetable for briefing and the arbitration hearing that allowed the Tribunal to render its Award within that period.[8]   ABNL, however, requested a materially longer period and wanted to address jurisdictional issues it raised for the first time in April 2003, at the preliminary hearing.[9] Most significantly, ABNL asserted a defense under Section 54 of the Nigerian Company and Allied Matters Act ("Nigerian Act").[10]   After receiving briefing on the jurisdictional issues, the Tribunal decided to carry those issues with the merits of the dispute.[11]

Meanwhile, on May 23, 2003, ABNL filed an action in Nigerian courts against BHPS and the arbitrators seeking *inter alia* to enjoin the pending arbitration.[12]   ABNL urged the Arbitral Tribunal to delay proceedings until the Nigerian court ruled on the injunction

---

[7]     Exhibit 1 to Affidavit of John P. Bowman in Support of BHPS's Response to ABNL's Application to Vacate Arbitration Award and BHPS's Cross-Motion to Confirm Award ("Bowman Affidavit"), at 1-2, ¶ 4.   The JCA contains nothing addressing what happens if the 120-day deadline is not met.

[8]     *See* Bowman Affidavit, at 2-3, ¶¶ 7, 8, and Exhibit 2 thereto.

[9]     *See* Bowman Affidavit, at 3, ¶¶ 9, 10, and Exhibit 3 thereto; *id.*, Exhibit 5, at 4.

[10]     Bowman Affidavit, at 3, ¶ 10.

[11]     *Id.*

[12]     Bowman Affidavit, at 3, ¶ 11, and Exhibit 4 thereto.

application, but the Arbitral Tribunal refused.[13]  ABNL proposed a schedule with the arbitration hearing on the merits to take place May 4 -14, 2004, if the hearing was to be held in Houston, Texas.[14]  The Tribunal, after circulating a draft procedural order for comment, and considering the parties' detailed responses, issued a Procedural Order No. 1 on July 2, 2003, which set the hearing to commence on December 8, 2003, in Houston.[15]  In so doing, the Tribunal denied ABNL's request for a May 2004 hearing in Houston because such a long extension would have delayed a decision until September 2004, to accommodate the parties' post-hearing briefing schedule.[16]  Instead, the Tribunal instead selected December 8-11, 2003, as the dates for the hearing and adjusted the briefing schedule accordingly.  The Tribunal issued a Revised Procedural Order No. 1 on August 15, 2003, which governed the proceedings.[17]

ABNL then declined to participate in the arbitration.[18]  On September 23, 2003, the Tribunal informed ABNL that the arbitration would take place as scheduled, Bowman Affidavit, at 5, ¶ 16 and Exhibit 10.  ABNL nevertheless did not file its statement of defense when due on October 8, 2003, but on November 21, 2003, after multiple postponements by

---

[13]     Bowman Affidavit, at 4-5, ¶¶ 14, 15, and Exhibits 7, 8 and 9 thereto.

[14]     *See* Bowman Affidavit, at 3-4, ¶ 12, and Exhibit 5 ( (Letter from Dele Edokpayi to Henri C. Alvarez, dated May 26, 2003 ("ABNL's May 26, 2003 Letter")), at 2, ¶ 3.  ABNL urged that January 5-16, 2004 be the hearing dates if the arbitration were held in Nigeria, with post-hearing briefing to be set in consultation with the parties.  ABNL's May 26th Letter, at 5-6.

[15]     Bowman Affidavit, at 4, ¶ 13.  Apparently, the Tribunal decided to hold the arbitration hearing in Houston at least in part because of ABNL's pending suit against the arbitrators and BHPS in Nigeria.  *See id.* at 4, ¶ 14.

[16]     *See id.* at 3-4, ¶ 12.

[17]     *See* Bowman Affidavit, at 4, ¶¶ 14.

[18]     Exhibit 9 to Bowman Affidavit (Letter from Ken E. Mozia to Henri Alvarez, dated August 18, 2003), at 2.

the Nigerian Federal High Court of ABNL's injunction proceeding, ABNL informed the Tribunal of its agreement to participate in the arbitration, sought an additional two weeks to file a response and defense to BHPS's statement of claim, and asked for a delay of the December 8 starting date for the arbitration hearing.[19]  On November 25, the Tribunal gave ABNL one additional week, until November 28, 2003, to file its statement of defense but denied the request to put off the hearing date.[20]  The Tribunal held that, given the imminent hearing date, the full requested delay of submission of ABNL's response would unfairly prejudice BHPS.[21]  The arbitration hearing took place in Houston, Texas, on December 8-11, 2003, as scheduled.[22]

On February 5, 2004, which was a week after its post-hearing brief was due, ABNL asked for and was granted a two-week extension to file its brief.[23]  ABNL filed its Post-Hearing Brief on the new due date of February 13, 2004.  BHPS timely filed a reply brief on March 8, 2004.[24]  The Arbitral Tribunal declared the record complete and the hearing closed on April 7, 2004, but advised the parties of the Arbitrators' need for an extension of the

---

[19]  Exhibit 11 to Bowman Affidavit (Letter from Dele Edokpayi to Henri Alvarez, dated November 21, 2003).

[20]  Exhibit 12 to Bowman Affidavit (Letter from Henri Alvarez to John P. Bowman & Dele Edokpayi, dated November 25, 2003).

[21]  *Id*.

[22]  Bowman Affidavit, at 5, ¶ 18.

[23]  Bowman Affidavit, at 5, ¶ 19, and Exhibits 13 (email from edokpayidele@aol.com to Alvarez@van faskeh.com dated February 5, 2004) and 14 (Henri Alvarez to John P. Bowman and Dele Edokpayi dated February 6, 2004).

[24]  This delay from October 8 until November 28 for ABNL's briefing consumed seven weeks and two days, but did not delay the hearing from the date of Dec. 8 which the Tribunal set in response to ABNL's implicit and explicit requests for postponements.  Then ABNL received another two week extension, for a total of more than two months' delay attributable to ABNL.

deadline for delivery of the Award.[25]  BHPS agreed to the extension.  ABNL objected.[26] ABNL contends that the hearing should have been closed on March 8, 2004, when ABNL's last brief was filed.[27]  On April 27, 2004, the Tribunal again requested an extension of time to render its award.  ABNL rejected the request for an extension of time to render the award in a letter dated April 29, 2004.[28]  On May 4, 2004 the Arbitral Tribunal re-opened the proceedings on its own initiative to invite both parties to provide additional submissions on one of ABNL's jurisdictional arguments.[29]  ABNL objected to the Arbitrators' reopening of the proceeding and declined the Tribunal's invitation to submit further briefing on or before June 16, 2004.  BHPS provided its supplemental brief to the Tribunal on June 9, 2004. ABNL also contends the reopened hearing should have been closed on June 16, the day the last brief was due.  Ultimately, the Tribunal declared the hearings closed on June 28, 2004.

On July 26, 2004, the Arbitral Tribunal filed a majority decision addressing both the merits and jurisdictional issues.  The Tribunal overruled ABNL's jurisdictional objections and held for BHPS on all but one of its claims.  The majority decision held that ABNL had to pay BHPS $1,984,265.22.[30]  Arbitrator Ojo dissented, concluding that the JCA, and thus

---

[25]     Bowman Affidavit, at 5-6, ¶ 20.

[26]     *See* Exhibit B to ABNL's Motion (Letter from Dele Edokpayi to Henri Alvarez dated June 3, 2004).

[27]     AAA Comm. Arb. Rule 35.

[28]     *See* Exhibit B to ABNL's Motion (Letter from Dele Edokpayi to Henri Alvarez dated June 3, 2004).

[29]     Bowman Affidavit, at 6, ¶ 21, and Exhibit 16.

[30]     Arbitration Award (attached as unnumbered Exhibit to ABNL's Motion) at 65, ¶ 252. The breakdown of the total $1,984,265.22 is $1,025,000 for unpaid portions of the management fee provided for in the JCA, $711,767.15 for unpaid time and materials charges, interest at 5% per annum (simple interest) commencing on September 21, 2001, $58,175.07 for arbitration costs, the AAA's administrative fee, and the fees and expenses of the Chairman (continued...)

the agreement to arbitrate, was void under § 54(2) of the Nigerian Act because BHPS had gone to Nigeria to sign the JCA and the Main Contract, presented itself jointly with ABNL to SPCD as a contractor, by "executing" (*i.e.*, performing) the Ogbotobo project to build the barge "to the extent that it even took out an insurance policy for the Ogbotobo Barge which was already in Nigeria.[31]

The evidence of record demonstrates that Mr. William Chang ("Chang"), International Case Manager for the Arbitration at the AAA International Center for Dispute Resolution, sent the parties' attorneys by e-mail, facsimile, and Federal Express, copies of the Arbitration Award on July 26, 2004, the same day the ruling and dissent (collectively, the "Award") were issued.[32]   ABNL asserts that it did not receive a "hard copy" of the Award until August 26, 2004, when a copy sent by Chang from the AAA on July 28, 2004 by DHL Airborne Express was delivered to the office of Edokpayi, ABNL's counsel, by staff of another tenant in counsel's office building.[33]   ABNL submits no proof that its counsel did not receive Chang's emailed copy of the Award.

On July 30, 2004, four days after the Arbitration Award was filed, the Nigerian court denied ABNL's request to enjoin the Arbitration.   The Nigerian court stated:   "The

---

[30]      (...continued)
of the Tribunal, and $189,323 for BHPS's attorneys' fees and expenses.   The arbitrators denied BHPS's claim for reimbursement of insurance premiums.

[31]      Dissent to Arbitration Award (attached as unnumbered Exhibit to ABNL's Motion), at 1.

[32]      Bowman Affidavit, at 6, ¶ 23, and Exhibit 18 thereto.

[33]      Declaration of Dele Edokpayi ("Edokpayi Declaration") attached to the Reply of ABNL to Amended Response of Baker Hughes Process Systems to ABNL's Application to Vacate Arbitration Award and Response to BHPS's Cross-Motion to Confirm Award [Doc. # 10] ("ABNL's Reply").

Arbitration Tribunal has the competence and jurisdiction to apply and construe Nigerian Law where it is found to affect the validity and enforceability of the Agreement."[34]

On November 1, 2004, ABNL filed an Application to Vacate Arbitration Award in the 234th Judicial District of Harris County, Texas.[35]   ABNL served the Application on BHPS's arbitration counsel on November 16, 2004.[36]  BHPS timely removed the action to federal court pursuant to Section 205 of the FAA on December 13, 2004.  BHPS filed its original Cross-Motion to Confirm the Award ("BHPS's Motion") on December 21, 2004, to which ABNL responded on February 9, 2004.

There are various procedural issues posed by the parties' motions.  First, BHPS contends that ABNL's Motion seeking to vacate the Arbitration Award is time-barred under § 12 of the FAA, which provides that notice of a "motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  BHPS contends the Award was delivered by e-mail and Federal Express to ABNL's counsel on July 26, 2004, and ABNL's Motion was not served on BHPS's counsel until well more than three months later, on November 16, 2004, and thus was untimely.[37]

Second, ABNL reasserts its jurisdictional argument, rejected by both the Arbitral Tribunal  and the Nigerian court that § 54 of the Nigerian Act applies to BHPS and BHPS failed to meet the requirements authorizing it to do business in Nigeria.

---

[34]    Bowman Affidavit, at 7, ¶ 24 and Exhibit 19 (Nigerian Court's Ruling).

[35]    Bowman Affidavit, at 7, ¶ 25 and Exhibit 20.

[36]    *Id.*

[37]    BHPS also contends that ABNL's Motion was not filed timely.  BHPS asserts that the deadline for the motion to vacate was October 26, 2004, and ABNL did not file its Application until November 1, 2004.

Third, ABNL contends that the Arbitral Tribunal lost jurisdiction to render the award when it failed to do so within the 120 day time limit for rendering the award as set forth in the JCA and the Tribunal's Procedural Order No. 1.  BHPS counters that ABNL has waived the 120-day deadline and simply tries now to use delay, much of which ABNL caused and to which both parties agreed, in order to unfairly avoid an unfavorable award.

Finally, on the merits of the Award, ABNL challenges the Tribunal's award of damages to BHPS, contending that the sums constitute "special" damages that contravene the express terms of §§ 8 and 12 of the JCA, which preclude liability of each party to the other for "any special, punitive, exemplary, indirect or consequential damages including without limitation, loss of use of property, loss of product, loss of profits, or business interruptions . . .."  BHPS counters that the Tribunal simply awarded damages for ABNL's breach of terms of the JCA, such as ABNL'S failure to pay the complete management fee and other expenses.

## II.  ANALYSIS

### A.  Procedural Matters

#### 1.  Choice of Law

ABNL filed this action in Texas state court pursuant to Texas Civil Practice and Remedies Code § 171.088(a)(3)(D), which provides that "On application of a party, the court shall vacate an award if the arbitrators conducted the hearing, contrary to Section 171.043, 171.044, 171.045, 171.046, or 171.047, in a manner that substantially prejudiced the rights of a party."  ABNL claims the arbitration hearing contravened § 171.045, which states:

> Unless otherwise provided by the agreement to arbitrate, the arbitrators may: (1) adjourn the hearing as necessary; and (2) on request of a party and for good cause, or on their own motion, postpone the hearing to a time not later than: (A) the date set by the agreement for making the award; or (B) a later date agreed to by the parties."

ABNL claims that the Tribunal violated § 12 of the JCA, which provides:

> Any dispute, controversy, or claim arising out of or in connection with this Agreement . . . shall be referred to and determined by binding arbitration, as the sole and exclusive remedy of the parties as to the Dispute, conducted in accordance with the American Arbitration Association ("AAA") arbitration rules for commercial disputes, as in effect on the date hereof (the "Rules"), which are deemed to be incorporated by reference, and the Federal Arbitration Act (Title 9 of the United States Code) . . ..

The JCA, § 12, also states: "The validity, construction, interpretation, and effect of this Agreement shall be governed by the substantive laws of Texas, excluding conflict laws and choice of law principles."

Because ABNL seeks to rely on Texas law to vacate the Award, the Court must decide the threshold question of whether the arbitral law of Texas or the FAA applies.  It is clear that the FAA applies.  The parties expressly agreed to resolve all disputes arising out of or in connection with the JCA through binding arbitration conducted in accordance with the FAA (and the AAA Rules).  The FAA applies when the parties to a contract so agree, even if there is no interstate commerce aspect to the parties' contract or dispute.  The FAA applies when the parties' contract includes a choice of law provision selecting a state's substantive law, but does not include an express reference to state arbitration law.  *Action Indus. v. United States Fid. & Guar. Co.*, 358 F.3d 337, 341 (5th Cir. 2004) ("FAA rules apply absent clear and unambiguous contractual language to the contrary.  In general, this Court permits arbitration under non-FAA rules if a contract expressly references state arbitration law . . .." (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59 (1995); *Hughes Training Inc. v. Cook*, 254 F.3d 588, 593 (5th Cir. 2001)))*; In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex.App.–Houston [1st Dist.] 2002, orig. proceeding) (upholding parties' choice-of-law provision); *see also In re First Tex. Homes, Inc.*, 120 S.W.3d 868, 869 (Tex. 2003) (claims in apparently purely local dispute between a home buyer and builder to be

arbitrated under the FAA when the contract provided that the FAA was to govern all disputes). The JCA specifically adopts the FAA and does not expressly reference the Texas General Arbitration Act. Therefore, the FAA rules govern the arbitration procedures for the parties' dispute.[38]

In any event, Texas law incorporates the FAA as state law. The Fifth Circuit recently noted in *Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355, 361 (5th Cir. 2003), that "[i]n *L & L Kempwood Associates v. Omega Builders, Inc.* [9 S.W.3d 125, 127-28, & n.15 (Tex.1999)], the Texas Supreme Court reiterated that the FAA is part of the substantive law of Texas and held, as a result, that the FAA applies in an arbitration agreement unless the choice-of-law provision 'specifically excludes the application of federal law. . . .'" ABNL's effort to rely on Texas arbitration law fails.

## 2.    Subject-Matter Jurisdiction Under the New York Convention

The FAA does not supply this Court with subject matter jurisdiction. Removal of the case from state court must have an independent jurisdictional basis. *See Bank One N.A. v. Shumake*, 281 F.3d 507, 513 (5th Cir. 2002); *Rio Grande Underwriters, Inc. v. Pitts Farms,*

---

[38]    As explained recently by the Fifth Circuit: "Arbitration under the FAA 'is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.' 'Just as parties may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted.' . . . In general, this Court permits arbitration under non-FAA rules if a contract expressly references state arbitration law, or if its arbitration clause specifies with certain exactitude how the FAA rules are to be modified." *Action Indus. v. United States Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Sanford Junior Univ.*, 489 U.S. 468, 477 (1989)).

Even if the JCA did not reference the FAA, that statute supplies the arbitral law for this dispute. The JCA involves interstate commerce. Texas courts hold that the Federal Arbitration Act applies to the disputes encompassed by the arbitration clause. *See American Realty Trust, Inc. v. JDN Real Estate-McKinney, L.P.*, 74 S.W.3d 527, 530 (Tex. App.–Dallas 2002, pet. denied); *In re Turner Bros. Trucking Co., Inc.*, 8 S.W.3d 370, 373-376 (Tex. App.–Texarkana 1999, mandamus denied). The JCA and the parties' dealings involved international commerce and thus FAA applies.

*Inc.*, 276 F.3d 683, 685 (5th Cir. 2001).  That basis is supplied by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, commonly known as the "New York Convention" (hereinafter, the "Convention"), 9 U.S.C. §§ 201-208. "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.   The Convention specifically provides for removal jurisdiction:  "Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." *Id.* § 205.

There is no question that the Convention is applicable.  Section 202 of the FAA provides that "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention," except if all parties to the arbitration are citizens of the United States.  *Id.*  "An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States." *Id.*

ABNL is incorporated in Nigeria.[39]  The parties do not contend they are citizens of the United States.[40]  In any event, the Award addressed a dispute arising from the JCA which governed the parties' relationship involving property to be used in Nigeria, performance of work outside the United States, and services rendered for and goods to be provided to SPCD, a company organized under the laws of Nigeria, a foreign state.  Thus, this dispute falls well within the ambit of the Convention.  *See Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 341 (5th Cir. 2004) (parties to an employment consultant contract both were U.S. citizens, but the contract involved performance in Nigeria; "the Convention Act governs the arbitral clause at issue concurrently with the FAA because there is a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself"); *Lander Co. v. MMP Invs.*, 107 F.3d 476, 478, 481 (7th Cir. 1997) (§ 202 applied (concurrently with the FAA) to an arbitration agreement in a contract between two U.S. corporations where the only link between their relationship and a foreign nation was that performance of the contract was to be in Poland); *compare Jones v. Sea Tow Servs.*, 30 F.3d 360, 362 (2d Cir. 1994) (involving a wholly domestic matter).

In addition, the parties specifically invoked the Convention in the JCA, § 12, which stated:  "[T]he decision of the Tribunal pursuant hereto shall be final and binding upon the parties and shall be enforceable in accordance with The New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (1958)."  The Fifth Circuit has

---

[39]     *See* ABNL's May 26, 2003 Letter, at 2, ¶ 3.

[40]     ABNL has an affiliate, ABNL Inc., Arbitration Award, at 13, a United States company, but this entity was not involved in the arbitration.  Although BHPS is incorporated in Bermuda, it is "a division of one or more Baker Hughes companies with operations headquartered in Houston, Texas and Rugby, England," *Id.* at 10, and "it performed the services contracted for in the JCA in the United States." *Id.* at 44.

emphasized time and again the importance of enforcing parties' arbitration contracts.  *See generally Action Indus.*, 358 F.3d at 340.[41]

**B.**     **Timeliness of ABNL's Motion to Vacate**

    **1.**     **Applicable Standard**

The FAA has a three-month limitations period within which challenges to arbitration awards must be filed.  9 U.S.C. § 12; *Olson v. Wexford Clearing Servs. Corp.,* 397 F.3d 488, 490 (7th Cir. 2005).  BHPS contends that ABNL's Motion to Vacate is time barred under the statute of limitations in the FAA,[42] which provides in pertinent part: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is ***filed or delivered***." 9 U.S.C. § 12 (emphasis added). The Award was filed by the Arbitral Tribunal with the AAA on July 26, 2004.  Edokpayi, ABNL's counsel, avers that a "hard copy" of the Award was not received by his office until August 26, 2004.  ABNL's Motion to Vacate was filed in state court on November 1, 2003, and was served on BHPS'S attorney on November 16, 2004.  BHPS contends that ABNL's Motion is time-barred because the deadline for service was October 26, 2004.[43]

---

[41]    Wherever there is a conflict between the Convention and the FAA, the Convention supersedes the FAA.  "When the Convention Act governs the recognition and enforcement of an arbitration agreement or award, however, the FAA applies only 'to the extent that [the FAA] is not in conflict with [the Convention Act] or the Convention as ratified by the United States.'" *Freudensprung*, 379 F.3d at 339 (citing to  9 U.S.C. § 208).

[42]    The Convention does not deal with time limits for motions to vacate, and therefore the FAA controls.

[43]    BHPS contends that even if the Court considers the timeliness of ABNL's Motion under the Texas General Arbitration Act ("TGAA"), that Motion is still time barred.   TGAA § 171.088(b) requires a party to file its application to vacate not later than the 90th day after the date of delivery of a copy of the award to the applicant.  BHPS contends that ABNL filed its Motion in the Texas state district court on November 1, 2004, more than 90 days after July 26, 2004, the date of delivery of the award to ABNL. The outcome under the TGAA is the same as under the FAA.

ABNL does not dispute that FAA § 12 determines the statute of limitations for a motion to vacate an arbitration award.  Rather, ABNL contends that the three month time limit is measured from either the filing or delivery of the Award, whichever is later, and that "delivery" means actual receipt of a copy of the Award.  The Court agrees.  In *Sargent v. Paine Webber Jackson & Curtis, Inc.*, 280 U.S. App. D.C. 7, 882 F.2d 529 (1989), the plaintiff investors sued their investment company and its account executive. Arbitration was compelled.  Dissatisfied with the award, the plaintiffs filed and served a motion to vacate on the defendants more than three months after the arbitrators' decision was filed but within three months of the plaintiffs' receipt of a copy of the award.  *Id.* at 530-31.  The Court of Appeals for the District of Columbia rejected the defendants' argument that "delivered" in FAA § 12's phrase "filed or delivered" meant the date the award was "mailed, or otherwise sent."  *Id.*  The court of appeals ruled that the date of delivery was the date the Plaintiffs received their copy of the award, which rendered the motion to vacate timely.  *Id.*; *see also Real Color Displays, Inc. v. Universal Applied*, 165 F.3d 19 (Table), 1998 WL 764711 (unpublished) (4th Cir. 1998) ("a  motion to vacate filed more than three months after Universal received the award is time-barred"); *Nordahl Dev. Corp. v. Salomon Smith Barney*, 309 F. Supp. 2d 1257, 1269 (D. Or. 2004) (holding that interpretation of "delivered" as "receipt" comports with its ordinary meaning); *Possehl, Inc. v. Shanghai Hia Xing Shipping*, 2001 WL 214234 *10 (S.D.N.Y. Mar. 1, 2001) ("'Delivery' means receipt of the award."); *Smith v. Shell Chem. Co.*, 333 F. Supp. 2d 579, 585 (M.D. La. 2004) (service of notice of intent to vacate an arbitration award not timely when not served until three days after the end of the third month after delivery of the award to the plaintiff).  The Court holds that a motion to vacate an arbitration award is timely if the objecting party serves the motion (or notice of intention to so move) on the opponent on or before expiration of three calendar months from

the date the movant received a copy of the award.  The more difficult issue in this case is whether ABNL's Motion to Vacate was served on BHPS within the three month period. The Court concludes that ABNL failed to do so.

## 2. Analysis of the Factual Record

It is unclear which party ultimately has the burden of proof on the issue of the timeliness of ABNL's Motion to Vacate.  It may well be ABNL because, as indicated by the strict deadline for motions to vacate, the FAA, the Convention, and public policy strongly favor confirmation of arbitration awards.  *See Trans Chemical Ltd. v. China Nat'l Machinery Import & Export Corp.*, 161 F.3d 314, 319 (5th Cir. 1998) ("The standard of review of an arbitration award under the FAA is one of deference.") (adopting reasoning in *Matter of Arbitration Between Trans Chemical Ltd. & China National Machinery Import & Export Corp.*, 978 F. Supp. 266, 303 (S.D. Tex. 1997), *aff'd Trans Chem v. China Natl Mach.*, 263 F.3d 162 (5th Cir. 2001)); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) ("The standard of review of an arbitration award under the FAA is one of deference."); *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002) ("In light of the strong federal policy favoring arbitration, '[j]udicial review of an arbitration award is extraordinarily narrow.'" (quoting *Gulf Coast Indus. Workers Union v. Exxon Co.*, 70 F.3d 847, 850 (5th Cir. 1995))).[44]  Nevertheless, in an exercise of caution, the Court assumes that the burden is on BHPS to demonstrate the lack of timeliness of ABNL's Motion because statutes of limitations are affirmative defenses in many contexts.  *See F.T.C. v. National Bus. Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004) ("A statute of limitations defense is an

---

[44]     ABNL could be said to have the burden by analogy to the requirement that plaintiffs generally must establish that federal courts have jurisdiction over the claims presented.  *See Howery v. Allstate Insurance Co.*, 243 F.3d 912, 2001 WL 203072 (5th Cir. 2001) ("The burden of establishing federal jurisdiction rests on the party seeking the federal forum." (footnote omitted)).

affirmative defense.  An affirmative defense places the burden of proof on the party pleading it." (citing FED. R. CIV. P. 8(c); *United States v. Cent. Gulf Lines, Inc.,* 974 F.2d 621, 629 (5th Cir. 1992)); *see also Geraghty & Miller, Inc. v. Conoco Inc.,* 234 F.3d 917, 929-30 (5th Cir. 2000) (party asserting statute of limitations defense has burden of proof); *In re Hinsley,* 201 F.3d 638, 644-45 ("Under Texas law, a party defending on ground of statute of limitations bears the burden of proof on this issue.").

Using a summary judgment-type procedure to address this issue, the Court initially determines if BHPS has met its burden of production to demonstrate a lack of timeliness of ABNL's Motion.  If BHPS can do so, the burden will shift to ABNL to refute this proof with evidence sufficient as a matter of law or, alternatively, at least raise a genuine and material fact issue requiring an evidentiary hearing on the timeliness question. Ultimately, the Court places on BHPS the burden of persuasion.

The Court deems BHPS's assertion that ABNL has failed to meet the FAA § 12 three-month limitations period to be an affirmative defense.  BHPS has properly raised and offered persuasive evidence on this issue.  Chang on behalf of the AAA properly directed his July 26, 2004 email transmitting a copy of the Award to Edokpayi's email address and the Court finds that it was received in the ordinary course.[45]  Chang used the e-mail address[46] that was on Edokpayi's own e-mail correspondence dated February 5, 2004 directed to the Arbitrators, BHPS's attorney, and the AAA ICDR.[47]  Therefore, the burden shifts to ABNL

---

[45]    Chang stated in a December 21, 2004 letter that he sent to the parties' attorneys by e-mail at 5:02 p.m. Eastern Daylight Time and by Federal Express, copies of the Arbitration Award on July 26, 2004, the day the ruling and dissent were issued.

[46]    Chang sent the email to edokpayidele@aol.com.  *See* Exhibit 18, Bowman Affidavit.

[47]    *See* Exhibit 13 to Bowman Affidavit.

BHPS provides evidence also that Chang faxed a copy of the Award to Bowman and
(continued...)

to either raise a fact issue on this question or demonstrate as a matter of law that ABNL's Motion is timely.  ABNL has not done so.

ABNL contends that, despite BHPS's proof of the AAA's email and fax, plus two international courier services' attempts at delivery, ABNL's counsel did not receive any copy of the Award until August 26, 2004, and thus service of ABNL's Motion to Vacate on November 16, 2004 was timely.  ABNL urges that there is no proof that its counsel either received or opened the AAA's e-mail containing a copy of the Award prior to August 26, 2004.  ABNL cites to Edokpayi's Declaration stating that his "Office" did not receive a "hard copy" of the Award until August 26.[48]  ABNL's evidence is insufficient.  Notably, Edokpayi does not in his five-page Declaration ever deny that he received and opened the AAA's email of July 26 containing the Award.  He does not state that the August 26 hard copy was the *only* copy of the Award he received.  There simply is no evidence to refute the evidence presented by BHPS that the email sent July 26, 2004 by Chang for the AAA was received by Edokpayi in the ordinary course of communications.  ABNL therefore fails to raise a genuine fact issue in response to BHPS's evidence concerning ABNL's attorney's receipt on or about

---

[47]    (...continued)
Edokpayi at the fax numbers used throughout the arbitration proceedings for both counsel. *See* Revised Procedural Order No. 1, at 4, ¶ 2.1; *compare, e.g.,* Fax Cover Sheet dated July 26, 2004 in Exhibit 18 to Bowman Affidavit *with* Exhibit 3 (Exhibit RA 2 dated April 9, 2003 (excerpt of ABNL's counsel's proposed provisional timetable for Procedural Order), Exhibit 16 to Bowman Affidavit (last page) (Fax Cover Sheet dated May 4, 2004), and Exhibit C to Edokpayi Declaration (Fax Cover Sheet dated September 23, 2003).  BHPS's attorney, John P. Bowman, submits documentary proof that he received Chang's email at 4:02 p.m. Central Daylight Time.  BHPS's Cross-Motion [Doc. # 5], Exhibit 18 to Bowman Affidavit.  Edokpayi, however, states that "we never also received any fax of the award of the arbitrators."  Edokpayi Declaration,  ¶ 31.  Accordingly, the Court finds a genuine fact issue on whether Edokpayi or his office received the faxed copy of the Award and will not rely on the evidence that such a copy was sent.

[48]    Edokpayi Declaration, ¶ 26.

July 26, 2004 of the Award.[49]  Nothing in FAA § 12 precludes an arbitration award from being delivered electronically.  Therefore, the three-month limitations period of FAA § 12 for service of a motion to vacate the award was triggered when the Award was delivered by email to ABNL's counsel, Edokpayi on or about July 26.

ABNL alternatively contends that the trigger date for FAA § 12's three-month period is governed by ¶ 5.1 of the Tribunal's Revised Procedural Order No. 1, which mandated that "receipt" did not occur until ABNL received its hard copy of the Award by facsimile or courier.  This argument is unavailing.  Paragraph 5.1 of the Revised Procedural Order No. 1 provides:  "Service upon the parties and the Arbitral Tribunal shall be by hand delivery, courier, fax or secure electronic mail.  . . . In the event any document is delivered by electronic mail, a hard copy shall also be sent by fax or courier."

In any event, ¶  5.1 does not restrict the AAA to delivery of the Award to fax or courier transmission.  Paragraph 5.1 merely requires fax or courier delivery of a hard copy if the document is originally transmitted by e-mail.  There is no specific time period in ¶ 5.1 within which the hard copy of the mailed document must be faxed or sent by courier following the email transmission.  Under the Tribunal's rules in Revised Procedural Order

---

[49]   It is less than clear from the evidence of record that Edokpayi actually received the Federal Express package the AAA sent on July 26, 2004.  The Federal Express tracking slip recites that the package sent by Chang on July 28, was delivered on July 30, 2004, but Edokpayi states that his office did not receive the hard copy of the Award until August 26, when the DHL package was delivered to his office.  He thus implicitly denies that he received the FedEx parcel.  Although this is the address given by ABNL's counsel for "Addresses for Delivery of Communications" in ¶ 2.1, of the Revised Procedural Order No. 1, there was a typographical error in the FedEx package address, in that the word "Box" was written "Vox."  There is no evidence that this address had been successfully used by the parties for FedEx or other courier deliveries.  The FedEx tracking document reflects that the package was delivered to counsel's Post Office Box, not the office address.  Moreover, the package was signed for by a person ("R. Apine") whom Edokpayi states was never an employee of counsel and did not have a Nigerian name.  Edokpayi also states that its counsel's office is not generally open at 7:55 a.m. when the package was reportedly received.  Thus, the Court does not rely on the FedEx mailing for any purpose.

No. 1, service of the Award by e-mail that actually is received is sufficient to trigger the three-month limitations period of FAA § 12, so long as the recipient also receives a hard copy within reasonable time thereafter.  *See also Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1250 (S.D. Cal. 2000) ("agreements in writing" in Article II of the Convention does not "exclude all other forms of written communications regularly utilized to conduct commerce" including facsimile, telex, and e-mail).  ABNL acknowledges that on August 26, 2004 Edokpayi received the DHL package sent by Chang on July 28, 2004 containing a hard copy of the Award.[50]  This transmittal was a follow-up to the email copy of the Award delivered to Edokpayi on or about July 26, 2004.  Thus, ABNL has not raised a material fact issue to rebut BHPS's limitations defense to the Motion to Vacate, and the Motion is time barred.  Because ABNL did not serve its Motion to Vacate until November 16, 2004, the Motion was untimely.

### C.   ABNL's Challenge to the Award in Response to BHPS's Cross-Motion

ABNL also contends that it is entitled to interpose its objections to the Award defensively in response to BHPS's cross-motion to confirm the award.  ABNL cites two district court opinions in support of this proposition: *Riko Enterprises, Inc. v. Seattle Supersonics Corp.*, 357 F. Supp. 521, 523 (S.D.N.Y. 1973) ("Upon a motion to confirm, the

---

[50]   Edokpayi Declaration, ¶¶ 26, 29.  Chang sent a copy of the Award to ABNL'S counsel on July 28, 2004 by DHL Airborne Express.  The DHL package was correctly addressed to the attention of Edokpayi, at the address at which ABNL specified it could receive correspondence in Revised Procedural Order No. 1, ¶ 2.1, and specifically designated Edokpayi as the intended recipient, identified the package as a legal document, and gave Edokpayi's telephone number  from his letterhead of ABNL's counsel's (Dele Edokpayi & Co., Legal Practitioners).  *See* Exhibit 11, Bowman Affidavit. While the Court questions ABNL's contention that Edokpayi did not receive the DHL package until August 26, 2004, when it was delivered by a staff person from another office in the building, Edokpayi Declaration, ¶ 29, proof of DHL's delivery is unavailable because that company destroys tracking records after 90 days.  *See* Exhibit 18 to Bowman Affidavit, (Letter from William Chang to John P. Bowman, dated December 21, 2004).  Thus, the Court credits Edokpayi's averment in this regard.

party opposing confirmation may apparently object upon any ground which constitutes a sufficient cause under the statute to vacate . . . although no such formal motion has been made.") (internal citations omitted); *Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 364 v. Ruan Transport Corporation*, 473 F. Supp. 298, 303 (N.D. Ind. 1979) (the only action which 9 U.S.C. § 12 prohibits is a filing of an independent motion for vacating, modifying, or correcting an award; § 12 does not limit the time during which defenses enumerated in 9 U.S.C. §§ 10 and 11 may be asserted).  The Court is unpersuaded. Having missed the three-month deadline to raise issues in a motion to vacate, ABNL cannot seek to set aside the Award in response to BHPS's Cross-Motion.  The weight of appellate authority establishes persuasively that "grounds for vacating an arbitration award may not be raised as an affirmative defense after the period provided in the appropriate statute of limitations governing applications to vacate an arbitration award has lapsed." *Local 802, Associated Musicians v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998); *see also Domino Group, Inc. v. Charlie Parker Mem'l Found.*, 985 F.2d 417, 419 (8th Cir. 1993) (holding party's "failure to file a motion to vacate, modify, or correct within three months of" arbitration award under FAA "waived any defenses to confirmation that might be asserted in a timely motion to vacate"); *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) ("[A] party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm."); *Tokura Constr. Co. v. Corporacion Raymond, S. A.*, 533 F. Supp. 1274, 1278 (S.D. Tex. 1982) (when objecting party to an arbitration award does not file objections within three months after the award is filed, the objecting party is barred by 9 U.S.C.. § 12 from raising objections when the opposing party brings an action to confirm the award); *Smith v. J-Hite, Inc.*, 127 S.W.3d 837, 841 (Tex. App. Eastland 2003, no. pet.) ("We agree with the

holding reached in *Tokura* that the 3-month deadline contained in Section 12 applies to any attempt to vacate an arbitration award.").  The Court holds that ABNL cannot attempt to vacate an arbitration award on grounds set forth in 9 U.S.C. § 10 in response to a motion to confirm an arbitration award without having given notice of intent to do so within after the three-month deadline contained in 9 U.S.C. § 12.

> **D.**      **Merits of ABNL's Motion to Vacate the Award**

> **1.**      **Applicable Arbitral Law**

Because ABNL strenuously challenges the proof on the date it received the Award and the result reached by the Court is not free from doubt, the Court will address the merits of ABNL's Motion to Vacate the Award.  The Court first determines the law that applies and the standards that govern the review of ABNL's complaints.  Then, the Court addresses the merits of the challenges.

This Court has primary jurisdiction under the Convention to review ABNL's grounds for annulment of the parties' international arbitration award.  *See* Convention art. V(1)(e); *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004) ("Under the Convention, 'the country in which, or under the [arbitration] law of which, [an] award was made' is said to have primary jurisdiction over the arbitration award. All other signatory states are secondary jurisdictions, in which parties can only contest whether that state should enforce the arbitral award." (footnoted citations omitted)).

Domestic United States arbitral law applies in this case to determine whether the award should be vacated.  *See Karaha Bodas*, 364 F.3d at 287-88 ("courts of a primary jurisdiction country may apply their own domestic law in evaluating a request to annul or set aside an arbitral award").   "From the plain language and history of the Convention, it is thus

apparent that a party may seek to vacate or set aside an award in the state in which, or under the law of which, the award is rendered. Moreover, the language and history of the Convention make it clear that such a motion is to be governed by domestic law of the rendering state . . . ." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. N.Y. 1997).  Therefore this Court is "free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Yusuf Ahmed Alghanim* 126 F.3d at 23.  This approach is consistent with the parties' arbitration agreement in the JCA.[51]

### 2.    Standard of Review to Vacate Award Under the FAA

"The standard of review of an arbitration award under the FAA is one of deference." *Trans Chemical Ltd. v. China Nat'l Machinery Import & Export Corp.*, 161 F.3d 314, 319 (5th Cir. 1998) (adopting reasoning in *Matter of Arbitration Between Trans Chemical Ltd. & China National Machinery Import & Export Corp.*, 978 F. Supp. 266, 303 (S.D. Tex. 1997), *aff'd Trans Chem v. China Natl Mach.*, 263 F.3d 162 (5th Cir. 2001)).  A party who has agreed to arbitrate can ask a court to review the arbitrator's decision, "but the court will set that decision aside only in very unusual circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).  "[T]he court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *Id.* at 943. "In light of the strong federal policy favoring arbitration, '[j]udicial review of an arbitration award is extraordinarily narrow.'" *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002) (quoting *Gulf Coast Indus. Workers Union v. Exxon Co.*, 70 F.3d 847, 850 (5th Cir.

---

[51]    The JCA, §12, provides that the arbitration shall be "conducted in accordance with the American Arbitration Association ('AAA') arbitration rules for commercial disputes, as in effect on the date hereof (the 'Rules'), which are deemed to be incorporated by reference, and the Federal Arbitration Act (Title 9 of the United States Code) . . .. "

1995)).  "Thus, 'whatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so. A party moving to vacate an arbitration award has the burden of proof."  *Trans Chemical*, 161 F.3d at 319 (adopting 978 F. Supp. at 303 (internal citations omitted)).  "A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration."  *Brook*, 294 F.3d at 672 (citing *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320-21 (5th Cir. 1994)).

The Court turns to the grounds asserted by ABNL for vacating the Award.

### 3.    ABNL'S Objections to the Tribunal's Jurisdiction

ABNL argues that the Tribunal exceeded its powers[52] in overruling ABNL's preliminary objection to jurisdiction, and ruling that § 54 of the Nigerian Act was inapplicable to the parties and the JCA.[53]  The Arbitral Tribunal concluded in this regard that:

---

[52]    There are four statutory grounds under the FAA to vacate an arbitration award:

(1)    Where the award was procured by corruption, fraud, or undue means.

(2)    Where there was evident partiality or corruption in the arbitrators, or either of them.

(3)    Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4)    Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (2002).  ABNL appears to rely on the fourth ground.

[53]    The Nigerian Act, § 54(2) provides that any company "having the intention of carrying on Business in Nigeria shall take steps necessary to obtain incorporation as a separate entity in Nigeria for that purpose," and that "[a]ny act of the company in contravention of subsection (1) of this section shall be void."   BHPS was a foreign entity for the purposes of Nigerian law and was not registered with the Nigerian Government.

(1) Texas substantive law governed the validity, construction, interpretation, and effect of the JCA; (2) No reason existed to override the parties' express intention to subject the JCA to Texan law; (3) Texas law did not require BHPS to be registered in Nigeria in order to enter into the JCA contract; (4) § 54 of the Nigerian Act did not rise to the level of a mandatory principle of international law from which the Tribunal could not derogate, and (5) the Arbitral Tribunal declined to exercise its discretion to apply § 54. Arbitration Award, ¶¶ 179-202.

ABNL contends that BHPS was a foreign company under the Nigerian Act, was not registered to carry on business in Nigeria, and its contracts with ABNL (the JCA) and SPDC were void, making the Tribunal's decision to award damages for the breach of the JCA error and beyond its jurisdiction. ABNL argues that both it and BHPS were responsible to SPDC under the Main Contract for final construction and installation of the barge in Nigeria, that the JCA merely set out who was "responsible for certain aspects of carrying on the business in Nigeria, not exclude [BHPS] from that responsibility," and if BHPS could not enforce the Main Contract because of non-compliance with Nigerian law, BHPS should not be able to enforce the JCA, "merely an appendage of the Main Contract."[54] ABNL complains that BHPS acted reprehensibly in choosing Texas law to apply in the JCA,[55] and essentially that this provision violated public policy because it allowed a party to "circumvent the otherwise application of the law of the locus to the contract."[56] ABNL also argues that the Tribunal erred by declining to apply § 54 of the Nigerian Act on the grounds that imposition of that law would work a very harsh result, enforcement of the law would destroy the legal

---

[54]     ABNL's Motion, at 9.

[55]     *Id.* at 10.

[56]     *Id.*

foundation of a three year commercial relationship between the parties, and estoppel precluded ABNL from enjoying the benefits of the contract and then claiming it was void under Nigerian law.

ABNL's arguments are essentially attacks on the correctness of the Arbitrators' legal and factual determinations.  After careful review of the extensive Award rendered by the Tribunal, the parties' arguments before this Court, and all other matters of record (including certain materials filed with the Tribunal), the Court concludes that the Arbitrators did not exceed their power or authority by determining that the Nigerian Act did not apply to the JCA.  Indeed, the Tribunal's detailed analysis and conclusions are not substantively unreasonable interpretations of the facts as found in the Award, the law relied upon, the parties' agreement (the JCA), and the record presented.[57]  The Award is entitled to great deference. *See, e.g., Gulf Coast Indus. Workers, v. Exxon Co.*, 991 F.2d 244, 248  (5th Cir. 1993). Even if there is a mistake of law or fact, that error is insufficient to set aside an arbitration award.  *See Trans Chemical*, 161 F.3d at 319 (adopting *Trans Chemical,* 978 F. Supp. at 308).   Moreover, the Nigerian Court, four days after the Tribunal issued its Award, held that "[t]he Arbitration Tribunal has the competence and jurisdiction to apply and construe Nigerian Law where it is found to affect the validity and enforceability of the Agreement."[58]  The FAA does not provide for vacation of an award on the basis asserted by ABNL.

---

[57]     *See* Arbitration Award, ¶¶ 179-202.

[58]     Bowman Affidavit, at 7, ¶ 24 and Exhibit 19 (Nigerian Court's Ruling).

4.     **ABNL'S Objections to the Timing of Award**

*Tribunal's Closing and Reopening of the Hearings.*–  ABNL contends that the Tribunal lost the jurisdiction to render the award when it failed to do so within the time limit for set forth in the JCA and Procedural Order No. 1.  ABNL makes various interrelated supporting arguments.  ABNL acknowledges that the parties agreed to extend the JCA's 120 day time frame for the award, but argues that the parties impliedly agreed to the schedule in Revised Procedural Order No. 1, and that under that schedule the Award is untimely.  ABNL argues that the "implicit agreement" between the parties to forego the 120-day time limit for issuance of the award was not open-ended.  Relying on the fact that the Tribunal originally set March 8, 2004 as the date for the last brief from the parties, ABNL, citing AAA Rule 35,[59] contends that the hearing was closed on March 8, and that AAA Rule 41[60] required that the award be rendered within 30 days, *i.e.*, April 7, 2004.  ABNL contends that the jurisdiction of the Tribunal was terminated on April 7 without any award having been rendered.  The Court is unpersuaded. Once the parties and the Tribunal established a schedule that was substantially longer than 120 days, to which ABNL did not object, the parties waived the 120-day requirement for the award.  No final date for issuance of the

---

[59]     Rule 35 of the Rules for Commercial Arbitration of the AAA states:

> If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs.  If documents are to be filed as provided in [Rule ]32 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the closing date of the hearing. The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing.

[60]     Rule 41 states "The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing."

award was set in either version of the Provisional Order No. 1.  The Arbitrators did not even set the dates for final briefing until after the hearing in December.

"Unless the parties explicitly agree otherwise, questions of procedure such as this one are submitted to the arbitrator along with the merits of the dispute*." See McKesson Corp. v. Local 150 IBT*, 969 F.2d 831, 834 (9th Cir. 1992).  The Tribunal held that "the original timetable, which would have permitted the 120-day time limit to be respected, was extended at ABNL's request and with the implicit agreement of both Parties, in order to ensure that ABNL would enjoy a fair hearing of its case."  Arbitration Award, ¶ 173.  This finding is entitled to deference, as are all findings of the arbitrators under the FAA.  The Arbitrators' determination that essentially ABNL waived any rights it may have had to insist on an award within the 120-day period in the JCA was well within the Arbitrators' discretion and mandate.

In any event, the JCA contained no language specifically depriving the Arbitrators of jurisdiction to decide a dispute if their award was late, nor any language negating the binding effect of any decision not delivered within the 120 days provided in the JCA.  Accordingly, there is no contractual basis for the contention that the Arbitrators lost their jurisdiction merely because the 120-day period expired without the award being issued.  *See, e.g., Titan Wheel Corp. of Iowa v. Local 2048, Int'l Ass'n of Machinists and Aerospace Workers*, 253 F.3d 1118, 1120 (8th Cir. 2001) (*comparing Detroit Coil Co. v. Int'l Ass'n of Machinists and Aerospace Workers, Lodge # 82*, 594 F.2d 575, 579 (6th Cir. 1979), *and Huntington Alloys, Inc. v. United Steelworkers*, 623 F.2d 335, 336, 338 (4th Cir. 1980), *with Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1199 (7th Cir. 1987), *and West Rock Lodge No. 2120, Int'l Ass'n of Machinists v. Geometric Tool Co.*, 406 F.2d 284, 286-87 (2d Cir. 1968)).

ABNL next contends that implicit in Revised Procedural Order No. 1 was an agreement that the parties would comply with these AAA Rules. Specifically, ABNL urges that the Tribunal violated AAA Rules by not declaring the hearing closed on March 8, the last day originally set for briefs to be filed; by reopening the hearing without all parties' consent, on May 4[61]; by thereby extending the time to render its award without ABNL's consent[62]; by declaring the reopened hearing closed almost two weeks after the last supplemental submission was due; and then by failing to render the Award within 30 days of the date ABNL claims the hearing should have been closed. In sum, ABNL thus contends that the parties, by consenting to the Revised Procedural Order No. 1, committed to adoption of immutable deadlines under the AAA Rules, which the Tribunal failed to comply with. These arguments fail. While it is true that the AAA Rules were incorporated by reference into the JCA in § 12, and thus were part of the parties' agreement, they were comparable to any other contract provision.[63] The parties could alter the limitations of these rules by

---

[61]    ABNL states that AAA Rule 36 precluded the Tribunal from reopening the proceedings on May 4 on its own initiative . AAA Rule 36 states:

> The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

[62]    ABNL here points to AAA Rule 38, which provides: "The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award."

[63]    The parties agreed that "[s]ubject to the Commercial Arbitration Rules, the Parties may agree to modify any period of time, or the AAA or Arbitral Tribunal may for good cause extend a period of time." *Id.* ¶ 3.3. It is not clear whether the introductory clause here, "[s]ubject to the Commercial Arbitration Rules," means that the AAA and the Arbitrators had the authority to alter the time limits under Revised Procedural Order No. 1 without the parties' approval beyond the time limits provided in the rules.

agreement.  Further, the AAA Rules were subject to waiver for failure to object to their violation.  For reasons explained above, ABNL waived its rights to insist on strict adherence to time limits in the JCA § 12. This conclusion includes the limitations in the AAA Rules. Under the Revised Procedural Order No. 1, the date for submission of the final briefs was to be decided by the Arbitrators in consultation with the parties,[64] and no date was given for the Award.

In any event, delays in violation of the AAA Rules did not deprive the Tribunal of jurisdiction to render an award in this case.  Because the JCA did not unequivocally state that jurisdiction would terminate after the deadlines in the JCA, including the AAA Rules' deadlines, the authority of the Arbitral Tribunal did not expire until after a "reasonable time" beyond the deadlines agreed to by the parties.  The Court assumes for the purposes of this ruling, but does not decide, that the Tribunal violated those rules in one or more of the ways argued by ABNL.  The Court holds that the Tribunal issued the Award within a reasonable time after the deadline under ABNL's construction of the Rules.  The Award, at most, was issued 3½ months after ABNL believes it was due.  Under all the circumstances, the delay was not unreasonable.  ABNL had urged jurisdictional arguments on which the Tribunal required additional briefing and submissions.  ABNL had requested during the lengthy proceedings various extensions of time, many of which were granted in whole or in part.  The Tribunal's need for more than 30 days to complete its work after the hearing, or its need to reopen the proceeding for additional input from the parties, was understandable and not unreasonable.  Finally, key to this conclusion is the fact that ABNL was not prejudiced in any way by the delay.

---

[64]      Revised Procedural Order No. 1, at 6, ¶ 3.1(k).

Part of the "reasonableness" inquiry is an evaluation of whether ABNL was prejudiced by the delay of issuance of the Award.  A party challenging an arbitration award on the ground that it was untimely must show prejudice from the delay.  As the Second Circuit has observed, courts "ought not to accept an arbitration rule which encourages postaward technical objections by a losing party as a means of avoiding an adverse arbitration decision."  *West Rock Lodge, etc. v. Geometric Tool Co., etc.*, 406 F.2d 284, 286 (2d Cir. 1968).  "[A]ny limitation upon the time in which an arbitrator can render his award [is] a directory limitation, not a mandatory one, and . . . it should always be within a court's discretion to uphold a late award if no objection to the delay has been made prior to the rendition of the award ***or there is no showing that actual harm to the losing party was caused by the delay***."  *Id.* (emphasis added); *see Hill*, 814 F.2d at 1199; *Titan Wheel*, 253 F.3d at 1121; *Jones*, 728 F.2d at 265 ("The determination of reasonableness must be made giving consideration to the surrounding circumstances and any element of prejudice or harm either party suffers.  This rule of reasonableness developed to prohibit parties from waiting until an award is made and objecting to it on the basis of its untimeliness only after the receive an unfavorable decision."); *see also Matter of Arbitration No. AAA13-161-0511-85 under the Grain Arbitration Rules v. Cargill Inc.*, 867 F.2d 130, 134-35 (2d Cir. 1989) ("[I]t is within a court's discretion to uphold a late award if no objection to the delay has been made prior to the rendition of the award or there is no showing that actual harm to the losing party was caused by the delay."); *Grinnell Housing Dev. Fund Corp. v. Local 32B-32J, Service Employees Int'l Union*, 767 F. Supp. 63, 66 (S.D.N.Y. 1991) ("Although under some circumstances the failure to render an award within the time prescribed by a[n] . . . agreement may afford a basis to vacate an award, an award may not be vacated on that ground if there has been no objection to the delay or if there is no prejudice to the losing party caused by the

delay."); *McMahon v. RMS Electronics, Inc.*, 695 F. Supp. 1557, 1559 (S.D.N.Y. 1988) (holding a court may confirm a late arbitration award if there is no prejudice to the losing party caused by the delay); *Hotel, Motel, Restaurant and HiRise Employees and Bartender's Union, Local 355 v. Fontainebleau Hotel Corp.*, 423 F. Supp. 83, 85 (S.D. Fla. 1976) (holding that a court could uphold a late award if there is no showing of actual harm to the losing party caused by the delay); *Barker v. Govt. Employees Ins. Co.*, 339 F. Supp. 1064, 1066-67 (D.D.C. 1972) (rejecting challenge based upon the arbitrator's failure to render award within 30 days of the close of the hearing as required by the Rules governing arbitration, in part because respondent was not prejudiced by the delay); *cf. Green v. Ameritech Corp.*, 12 F. Supp. 2d 662, 665 (E.D. Mich. 1998), *rev'd and remanded on other grounds*, 200 F.3d 967 (6th Cir. 2000)) (party to arbitration waived the right to a timely decision when he did not formally object to any delay in the issuance of the decision for approximately a year; in any event, delay must be substantial and cause a party prejudice before it is a ground for vacating an arbitral award).[65]

ABNL proffers no persuasive argument that it suffered any prejudice.  The only prejudice plaintiff claims to have suffered from the arbitrator's late decision is a delayed receipt of "bad news." This does not constitute "prejudice" under any formulation recognized by the courts.  Any suggestion of prejudice from the 3½ month delay in the issuance of the Award is disingenuous in light of ABNL's requests to postpone the hearing until May 2004 or until the Nigerian court ruled on its jurisdictional claims.[66]  ABNL thus has not established

---

[65]     This rule is consistent with and furthers federal policies that "parties must state in unequivocal language whether they intend for the arbitrators to lose their jurisdiction if they render a late award." *Jones*, 728 F.2d at 265.

[66]     Notably, the Award was actually delivered before it would have been had the parties adhered to either of ABNL's proposed schedules.

that it was prejudiced by the delay of the Award for approximately 3½ months from April 7, 2004, when ABNL contend the Arbitrators should have ruled, nor by any delay in the Tribunal declaring the hearings closed,[67] nor in the reopening of the hearings to receive additional information on one of ABNL's jurisdictional defenses.  It therefore is within this Court's discretion to enforce the Tribunal's decision.  Therefore, without rendering an opinion on whether or not the Arbitral Tribunal issued an untimely award, this Court upholds the jurisdiction of the Tribunal to issue the Award and finds the Award binding under all the circumstances presented, including the lack of showing of prejudice to ABNL.  To the extent that ABNL contends that the Arbitrators' violation of the AAA Commercial Rules voids the Award, the contention is rejected.

*__ABNL's Objections to Damages__.* – ABNL claims that the damages which the Arbitral Tribunal awarded BHPS for ABNL's breach of contract were "special damages."  ABNL argues "Claimant's reference sounds in breach of contract and as is well known in such cases, the only damages recoverable are special damages." ABNL's Motion, at 18.  Later ABNL says "The damages claimed herein by the claimant was sustained in the circumstances of the alleged failure of the respondent to perform under the JCA.  This is classic special damages." *Id.* at 19.

The JCA indeed prohibits the Arbitral Tribunal from awarding "special damages." In § 8 the JCA states "Neither party shall be liable to the other party for any special, punitive, exemplary, indirect or consequential damages including, without limitation, loss of use of

---

[67]     The Tribunal's closing the hearing after the close of the evidence does not necessarily violate AAA Rule 35.  *See Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551 (2d Cir. 1985).  In determining when to deem the hearing closed, "Rule 53, allowing some flexibility, gives the arbitrators, and ultimately the AAA, the power to interpret and apply the AAA rules." *Id.* at 554.

property, loss of product, loss of profits, or business interruptions ...” Furthermore, JCA § 12 provides: “No award shall be made for punitive, special, exemplary, or consequential damages, including loss of profits or loss of business opportunity.”

The Arbitral Tribunal ruled that the damages BHPS sought were not expressly excluded by the terms of the JCA.  “The damages claimed are the direct result of ABNL’s alleged breach, i.e. the outstanding balance of the fee, the time and materials charges, the Insurance Premiums, and the legal costs required to recover the claim plus a reasonable amount of interest.  There is nothing indirect, consequential or in any way not foreseeable contained in this claim.”  Arbitration Award, ¶ 177.  The Tribunal looked up the plain meaning of consequential damages, special damages, and general damages in BLACK’S LAW DICTIONARY.[68]  Based on these definitions the Arbitral Tribunal concluded that “[o]n a reasonable construction, inclusion of consequential, indirect and special damages in Articles 8 and 12 of the JCA reflects the attempt of a prudent solicitor to cover all facets of the same concept: to exclude the recovery of damages that do not flow necessarily, obviously, or directly from a breach of contract.  To put it positively, damages are limited to general or direct damages.”  Arbitration Award, ¶ 176.

The standard of review of an arbitration award is very narrow:

In deciding whether an arbitration panel exceeded its authority, the district court resolves all doubts in favor of arbitration. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320-21 (5th Cir. 1994) (citing *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993)).  In reviewing an award, a court is not limited to the panel’s explanation of the award.  *Executone*, 26 F.3d at 1325.  A district court “looks only to the result reached. The single question is whether the award, however arrived at, is rationally inferable from the contract.”  *Id.* (quoting *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215, 1219 (5th Cir. 1990)).

---

[68]     B.A. Garner, ed., 7th ed. (St. Paul: West Group, 1999).

*Lummus Global Amazonas, S.A. v. Aguaytia Energy del Peru, S.R. Ltda.*, 256 F. Supp. 2d 594, 607 (S.D. Tex. 2002).

The damages granted by the Tribunal are directly tied to ABNL's obligations under the JCA.  The Tribunal did not exceed its authority in including any portion of the damages granted to BHPS in the Award.  The Arbitrators did not exceed their authority in using a legal dictionary to assist them in defining the terms "special damages," "consequential damages," and "lost profits."  These definitions also fall squarely within the Fifth Circuit's definition of special damages.  *See Texas A&M Res. Fnd'n. v. Magna Transp., Inc.*, 338 F.3d 394, 404 (5th Cir. 2003).  The Tribunal also did not exceed its authority in concluding that the damages sought were the direct result of ABNL's breach, and so were not excluded by §§ 8 or 12 of the JCA.  These conclusions are reasonable.

E.     **BHPS's Motion to Confirm the Award**

The Court turns to BHPS's Cross-Motion to Confirm the Arbitration Award. The FAA provides that "at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [Title 9]." 9 U.S.C. § 9.  Therefore, a motion to confirm an arbitration award shall be granted unless the challenger shows that the award can be vacated on one of the grounds in §§ 10[69] and 11[70] of the FAA, such as that the award was

---

[69]     *See supra* note 52.

[70]     FAA § 11 governs modification or corrections to awards, such as when there is an "evident material miscalculation of figures or an evidence material mistake in the description of any person, thing, or property referred to in the award"; where "the arbitrators have awarded upon a matter not submitted to them," unless the matter does not affect the merits of the decision; or where the award is "imperfect in matter of form not affecting the merits of the controversy."

procured by fraud or undue means, that the complained of actions by the arbitrators denied it a fundamentally fair hearing, or that the arbitration panel exceeded its authority. *Harris v. Parker College of Chiropractic,* 286 F.3d 790, 792 (5th Cir. 2002). ABNL does not, and cannot, complain that the Award was procured by fraud or undue means or that ABNL was denied a "fundamentally fair hearing." ABNL simply complains that the Tribunal lacked jurisdiction. Having rejected these claims, there is no reason to deny BHPS's motion to confirm the Award or not to enter judgment against ABNL based on that Award.[71]

### 2.      Analysis Under the New York Convention

BHPS seeks under the New York Convention an order confirming the Award. BHPS has shown itself entitled to such a ruling. A party seeking to confirm an arbitration award may seek from a court with jurisdiction over the matter an order confirming the award as against any other party to the arbitration "[w]ithin three years after an arbitral award falling under the Convention is made." 9 U.S.C. § 201 *et seq.* The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* § 207. The applicant must supply the court with the original award and original agreement between the parties, or certified copies of those documents. Convention, Art. IV. BHPS has supplied certified copies of the necessary documents to the Court.[72] Thus, under FAA § 207, the Court must confirm the Award unless ABNL alleges and proves one of the reasons for denying enforcement provided in Article V

---

[71]     ABNL suggests that the Tribunal's refusal to apply § 54 of the Nigerian Act and the JCA's selection of Texas substantive law violate public policy. These arguments, made in passing by ABNL, are not supported by any legal authorities and are rejected. The parties agreement to the application of Texas substantive law is binding on ABNL.

[72]     Exhibits 1 and 17 to BHPS's Cross-Motion to Confirm Arbitration Award.

of the Convention.  ABNL makes no such argument and provides no evidence that warrants denial of confirmation of the Award in BHPS's favor.

## IV.     <u>CONCLUSION</u>

Having rejected each of the challenges proffered by ABNL in its Motion to Vacate, the Court has no basis to deny BHPS's Motion to Confirm.  The Court concludes that the Award should be confirmed.  Judgment will be entered in favor of BHPS against ABNL based on the Award.  It is therefore

**ORDERED** that Andy Boyo Nigeria Limited's Application to Vacate Arbitration Award [Doc. # 1] is **DENIED**. It is further

**ORDERED** that Baker Hughes Process Systems' Cross-Motion to Confirm Award [Doc. # 5] is **GRANTED**.

SIGNED at Houston, Texas, this **30th day** of **April, 2005.**

Nancy F. Atlas
United States District Judge